**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                    No. 02-5009

DAVID WAYNE STOUT,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CR-02-202)

Submitted: August 6, 2003

Decided: August 20, 2003

Before WIDENER, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Amos Granger Tyndall, OSBORN & TYNDALL, P.L.L.C., Chapel Hill, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Randall S. Galyon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

David Wayne Stout appeals his conviction for conspiracy to possess with intent to distribute in excess of fifty kilograms of marijuana and his resulting sixty-one month sentence. Stout's attorney has filed a brief raising three issues: (1) sufficiency of the evidence; (2) error in failing to disclose co-defendants' presentence reports ("PSRs"); and (3) adequacy of the jury instructions. Stout has filed a motion to submit a pro se supplemental brief raising numerous additional claims. Finding no reversible error, we affirm Stout's conviction and sentence.

I.

Several months before Stout's involvement, Jody Brafford, who worked for the Chatham County Utilities Department, dug a pit at a landfill at the request of the Chatham County Sheriff's Department. Brafford and several deputies disposed of a large quantity of marijuana in the pit and covered it with dirt.

After aiding law enforcement in burying the marijuana, Brafford told Stout about the buried marijuana and gave Stout a map describing the location. Stout spoke with Jamie Harris and Gary Causey about the marijuana. Both Harris and Causey testified for the Government at Stout's trial. Sometime in October 2000, Stout, Harris, Causey, and Wilbur Sewell rode to the landfill at midnight in a truck driven by Causey's father, Ted. The five men agreed to divide the recovered marijuana into equal shares. Altogether the marijuana recovered that night weighed 258 pounds.

Between October and December 7, 2000, the Causeys and Harris started distributing their shares of the recovered marijuana. On December 7, Harris was arrested with fifty pounds of marijuana. Agents then approached Gary Causey, who admitted his participation and agreed to cooperate. Ted Causey voluntarily delivered 144 pounds of marijuana to federal agents.

Gary Causey engaged in two tape-recorded conversations with Stout. The first was a telephone conversation on December 13. The two discussed their participation in the dig and their concern that they would be discovered. The second took place on December 20 between Stout, Gary Causey, and Harris. During this conversation, Stout expressed dismay when Gary Causey informed him that the marijuana had already been sold for $500 a pound. Disappointed at the sale price, Stout stated that he "already got a guy giving me $600 a pound for every pound [of marijuana] I got." He then stated that "one of the reasons I bought that truck, because I was—I'm sort of damn—you know, I'm counting on this shit cause—I mean, now chances of us getting into a situation like that or having access to something like that or making money like that, there ain't—there's no way."

During the trial, Stout moved for disclosure of Gary Causey's and Harris's presentence reports. Defense counsel argued that Harris and Causey might have given information in the PSRs that could be used for impeachment purposes at trial. Defense counsel and the Government's attorney predicted that Causey and Harris would testify that the marijuana was intended to be split among the conspirators. However, defense counsel was worried that Causey and Harris might testify differently, and he wanted the PSRs to possibly impeach them if they did.

After reviewing the information in the PSRs, the district court stated, "I do not believe at this point, that there should be a disclosure." Stout's counsel requested that he be permitted to renew the motion, should Harris and Causey change their testimony, and the court agreed.

During the Government's case-in-chief, Harris and Causey testified, consistent with their earlier statements and Stout's theory of the case, that the conspirators agreed to an equal split of the marijuana. Stout did not renew his request for disclosure.

At the charge conference, Stout requested that the marijuana conspiracy instruction include the drug amount. Instead, the district court bifurcated the process, first instructing on the elements of a marijuana conspiracy, without reference to drug amount. After the jury returned

a guilty verdict as to the charge of conspiracy to possess with intent to distribute marijuana, the district court gave instructions regarding the determination of what amount of marijuana was attributable to Stout. Thereafter, the jury unanimously determined beyond a reasonable doubt that Stout was responsible for 210.4 pounds (95 kilograms) of marijuana.

## II.

In reviewing the sufficiency of the Government's evidence, we must sustain the jury's verdict, "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942). To prove conspiracy to possess marijuana with intent to distribute under 21 U.S.C. §§ 841(a)(1), 846 (2000), the Government must show that: (1) an agreement to possess marijuana with intent to distribute existed between two or more persons, (2) the defendant knew of the conspiracy, and (3) the defendant knowingly and voluntarily became part of the conspiracy. *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). A conspiracy is generally proved by circumstantial evidence and the context surrounding the evidence. *Id.* In addition, under 21 U.S.C. § 841(b)(1)(C) (West Supp. 2003), possession of more than fifty but less than 100 kilograms of marijuana, with the intent to distribute, is punishable by up to twenty years in prison.

Stout makes two arguments regarding the sufficiency of the evidence. First, he contends that the Government did not show that there was an agreement regarding the distribution of the marijuana. Instead, the participants agreed to divide the marijuana and go their separate ways. Second, Stout asserts that he should only have been held accountable for one-fifth of the marijuana—or forty-two pounds (nineteen kilograms), and thus, there was insufficient evidence that he was involved in a conspiracy involving over fifty kilograms of marijuana.

Regarding Stout's first claim, when the co-conspirators unearthed the marijuana, they each constructively possessed the entire amount. When they agreed to dig up the marijuana, the conspirators intended to distribute it. This is clear from the amount of marijuana involved (and even from the amount of each coconspirator's individual share),

*see United States v. Ray*, 250 F.3d 596, 599-601 (8th Cir. 2001), *cert. denied*, 535 U.S. 980 (2002) (ruling that possession of thirty-four pounds of marijuana created inference of intent to distribute), as well as from Stout's statements. Thus, there was sufficient evidence that the conspiracy was one to possess with intent to distribute marijuana.

Turning to the drug amount, Stout again ignores the fact that he participated in the digging operation that yielded over 210 pounds of marijuana. Thus, he was directly involved with the entire amount of contraband obtained, even though it was then supposed to be divided. As such, there was clearly sufficient evidence that Stout was a member of a conspiracy involving more than fifty kilograms of marijuana.

## III.

Stout next challenges the district court's denial of his request for disclosure of Causey's and Harris's PSRs. However, a defendant is not entitled to disclosure of a co-defendant's PSR unless he can show how the information contained in the PSR will be both material and favorable to his defense. *United States v. Trevino*, 89 F.3d 187, 192 (4th Cir. 1996) (recognizing that the confidentiality of PSRs should be "jealously guarded").

Because Causey and Harris testified as Stout had hoped—that the conspirators had agreed to split up the marijuana and that they had no agreement regarding distribution,* Stout cannot show how disclosure would have assisted his case. While Stout urges this court to independently review the PSRs for "favorable information," Stout is not entitled to have the court conduct a fishing expedition for him. *Trevino* places the burden on Stout to show that the PSRs contained helpful evidence. Stout's conclusory claims are insufficient to meet this burden.

## IV.

Stout alleges that, because his jury instructions were bifurcated,

---

*In addition, after hearing the witnesses' testimony, Stout declined to renew his motion.

they failed to include the essential element that the agreement involved over fifty kilograms of marijuana. Instead, Stout contends that the jury was permitted to find that Stout was part of a conspiracy and that he was responsible for over fifty kilograms of marijuana, even in the absence of any agreement among the conspirators regarding the amount. We review a district court's ruling on jury instructions for abuse of discretion. *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1995).

Stout is incorrect that, at the time the conspiracy agreement is formed, the conspirators must agree on the amount they will possess with intent to distribute. Instead, the parties need only agree to commit an unlawful act. *See Burgos*, 94 F.3d at 860-61. Furthermore, it is abundantly clear that the conspirators *did* agree to possess with intent to distribute all the marijuana that they could find. The jury's finding that Stout was responsible for the entire drug quantity beyond a reasonable doubt amply illustrates the jury's belief that the conspiracy itself involved the entire amount. Thus, any error in bifurcating the proceedings was harmless. *See Neder v. United States*, 527 U.S. 1, 15 (1999) (standard of review).

V.

In his pro se brief, Stout raises numerous claims. We have examined them carefully and find each to be without merit. Accordingly, although we grant Stout's motion to file a supplemental brief, we affirm Stout's conviction and sentence. We dispense with oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*